UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Palmetto Assisted Living Systems, Inc., | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No. 3:18-cv-02665-CMC ) |
| KeyBank National Association; *et al.*; | ) ) |
| Defendants. | ) |

### MOTION OF KEYBANK NATIONAL ASSOCIATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT WITH PREJUDICE

Defendants KeyBank National Association ("**KeyBank**"), Deutsche Bank Trust Company Americas, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2014-K37 (the "**2014-K37 Trust**"), and U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2013-KS01 (the "**2013-KS01 Trust**") hereby submit their Motion to Dismiss All Counts of Plaintiff's Complaint with Prejudice (the "**Motion to Dismiss**").[1]  The 2014-K37 Trust and the 2013-KS01 Trust are sometimes hereinafter referred to collectively as the "**Trusts**."

### Introduction

KeyBank and the Trusts seek dismissal of Plaintiff's Compliant with prejudice under Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127

---

[1] Pursuant to Local Civil Rules 7.04 and 7.05, DSC, a full explanation of the motion is provided herein and, therefore, a supporting memorandum would serve no useful purpose.

65407024.3

S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Facial plausibility exists where "pleaded factual content allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Creamer v. Anderson Cty. Sheriff's Office*, No. 8:13-CV-03405-JMC, 2014 WL 3889118, at *3 (D. S.C. Aug. 7, 2014), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiff's Complaint fails to state sufficient facts to allow the Court to draw a reasonable inference that KeyBank and the Trusts are liable for breach of contract or that Plaintiff is entitled to declaratory judgment.

**Factual Allegations**

Well-pled facts in the Complaint are treated as true for purposes of the Motion to Dismiss. Conclusions of law in the Complaint are disregarded and will not be deemed true. The following facts are derived from the Complaint (hereinafter, the "**Facts**"):

*A.     The Subordination Agreements*

1.     Plaintiff is a party to three Subordination Agreements, copies of which are attached collectively as a single exhibit to the Complaint. *See* Complaint, at ¶ 2, and Exhibit A thereto.

2.     The 2014-K37 Trust is a party to one of the Subordination Agreements. *See* Exhibit A of Complaint.

3.     The 2013-KS01 Trust is a party to the other two Subordination Agreements. *Id.*

4.     KeyBank is not a party to any of the Subordination Agreements. *Id.*

5.     KeyBank acts as Master Servicer for the 2014-K37 Trust and 2013-KS01 Trust in connection with the promissory notes and security instruments referenced in the recitals of each of the three Subordination Agreements. *See* Complaint, at ¶ 16.

2

65407024.3

### B.     *The Harbison Loan*

6.     The Subordination Agreement executed by Defendant FC Real Estate – Harbison, LLC ("**Harbison Borrower**"), Plaintiff, and the 2014-K37 Trust (the "**Harbison Subordination Agreement**") recites that the 2014-K37 Trust is the owner and holder of a commercial mortgage loan evidenced by a promissory note, dated July 29, 2013, in the original principal amount of $9.24 million (the "**Harbison Loan**"). *See* Exhibit A of Complaint.

7.     The Harbison Subordination Agreement recites that Harbison Borrower mortgaged its property known as "Agape at Harbison" to the 2014-K37 Trust as collateral for the Harbison Loan. *Id*.

### C.     *The Garden City Loan*

8.     The Subordination Agreement executed by Defendant FC Real Estate – Garden City, LLC ("**Garden City Borrower**"), Plaintiff, and the 2013-KS01 Trust (the "**Garden City Subordination Agreement**") recites that the 2013-KS01 Trust is the owner and holder of a commercial mortgage loan evidenced by a promissory note, dated July 23, 2012, in the original principal amount of $10.5 million (the "**Garden City Loan**"). *Id.*

9.     The Garden City Subordination Agreement recites that Garden City Borrower mortgaged its property known as "Agape at Garden City" to the 2013-KS01 Trust as collateral for the Garden City Loan. *Id.*

### D.     *The Rock Hill Loan*

10.    The Subordination Agreement executed by Defendant FC Real Estate – Rock Hill, LLC ("**Rock Hill Borrower**"), Plaintiff, and the 2013-KS01 Trust (the "**Rock Hill Subordination Agreement**") recites that the 2013-KS01 Trust is the owner and holder of a

commercial mortgage loan evidenced by a promissory note, dated February 14, 2012, in the original principal amount of $11 million (the "**Rock Hill Loan**"). *Id.*

11.     The Rock Hill Subordination Agreement recites that Rock Hill Borrower mortgaged its property known as "Agape Senior – Rock Hill" to the 2013-KS01 Trust as collateral for the Rock Hill Loan. *Id.* The Harbison Subordination Agreement, the Garden City Subordination Agreement, and the Rock Hill Subordination Agreement are sometimes referred to herein collectively as the "**Subordination Agreements**." The Harbison Loan, Garden City Loan, and Rock Hill Loan are sometimes referred to herein collectively as the "**Senior Loans**." Harbison Borrower, Garden City Borrower, and Rock Hill Borrower are sometimes referred to herein collectively as the "**Senior Borrowers**." Agape at Harbison, Agape at Garden City, and Agape Senior – Rock Hill are sometimes referred to herein collectively as the "**Mortgaged Properties**."

*E.     The FC Midlands Note*

12.     Plaintiff is the holder of a promissory note executed by Defendant FC Midlands, LLC ("**FC Midlands**"), dated August 14, 2015, in the original principal amount of $8 million (the "**Subordinate Note**"). *See* Complaint, at ¶ 42.

13.     The Subordinate Note is secured by a pledge agreement made by FC Midlands in favor of Plaintiff (the "**FC Midlands Pledge**"). *See* Complaint, at ¶ 43.

14.     Under the FC Midlands Pledge, FC Midlands granted to Plaintiff a lien on 100% of the membership interests of its wholly owned subsidiary, FC Midlands Properties III, LLC ("**FC Midlands III**"). *See* Complaint, at ¶ 43.

15.     FC Midlands III is the parent of each of the Senior Borrowers. The Subordination Agreements recite that, but for the terms of the Subordination Agreements, the grant of the FC

4

65407024.3

Midlands Pledge would have constituted a default under the loan documents evidencing the Senior Loans. *See* Complaint, at ¶ 43, and Subordination Agreements attached as Exhibit A to Complaint.

*F.     Subordination Language; Trust Consent Required For Foreclosure By Plaintiff Of Pledged Equity Interests*

16. The obligations owed under the Senior Loans are referred to as the "**Senior Indebtedness**" in the Subordination Agreements. *See* Section 1 of Subordination Agreements attached as part of Exhibit A to Complaint.

17. The obligations owed under the Subordinate Note are referred to as the "**Subordinate Indebtedness**" in the Subordination Agreements. *Id.*

18. The membership interests pledged to Plaintiff under the FC Midlands Pledge are referred to in the Subordination Agreements as the "**Pledged Assets**." *See* Subordination Agreements attached as part of Exhibit A to Complaint.

19. Section 2(a) of each of the Subordination Agreements states:

> The Subordinate Indebtedness is and will at all times continue to be subject and subordinate in right of payment to the prior payment in full of the Senior Indebtedness.

*See* Section 2 of Subordination Agreements attached as part of Exhibit A to Complaint.

20. Section 3 of each of the Subordination Agreements states:

> Prior to the satisfaction of the Senior Indebtedness in full, [Plaintiff] will not pursue any Enforcement Action except with [the Trust's] consent and in accordance with [the Trust's] Loan Documents. *Specifically, under no circumstances* may any party acquire any interest in the Pledged Assets without the approval of [the Trust] in accordance with the Transfer provisions of the Loan Agreement, including payment of an applicable Transfer Fee.

(emphasis added). *See* Section 3 of Subordination Agreements attached as part of Exhibit A to Complaint.

65407024.3

21. "Enforcement Action" is defined in the Subordination Agreements as follows:

> "Enforcement Action" means any of the following actions taken by or at the direction of [Plaintiff]: the advertising of or commencement of any foreclosure or UCC sale proceedings, the taking of possession or control of any of the Pledged Assets, the commencement of any suit or other legal, administrative, or arbitration proceeding based upon the Subordinate Note and affecting or which potentially could affect any Pledged Assets.

*Id.*

22. The Subordination Agreements state that they are to be governed by South Carolina law. *See* Section 5(f) of Subordination Agreements attached as part of Exhibit A to Complaint.

G.   *Plaintiff's Request For, And Trusts' Denial Of, Consent To Enforcement Action*

23. In a letter dated August 15, 2018, Plaintiff requested that the Trusts consent to an Enforcement Action by Plaintiff. *See* Complaint, at ¶ 48, and letter attached as part of Exhibit A to Complaint.

24. In a letter dated August 20, 2018, the Trusts denied Plaintiff's request to engage in an Enforcement Action. *See* Complaint, at ¶ 49, and Exhibit C thereto.

25. Plaintiff filed its Complaint on August 29, 2018, in the South Carolina State Court, County of Richland. *See* Complaint.

26. KeyBank and the Trusts properly removed the case to this Court on September 28, 2018. *See* Doc. No. 1.

## Argument

The Subordination Agreements are governed by South Carolina law. *See* Facts at 22. To prevail on a breach of contract claim under South Carolina law, Plaintiff must show, among other things, that there was an actual breach of the Subordination Agreements. *See Creamer* at *3.

Plaintiff has failed to show that the Subordination Agreements have been breached. The *status quo* under the Subordination Agreements is that, "[p]rior to the satisfaction of the Senior Indebtedness in full, [Plaintiff] will not pursue any Enforcement Action …" *See* Facts at 20. The Trusts' refusal to consent to an Enforcement Action cannot possibly constitute a breach of the Subordination Agreements when Plaintiff expressly agreed in the Subordination Agreements that it may not proceed with an Enforcement Action until after the Trusts are paid in full.

Plaintiff attempts to circumvent the "actual breach" element of its breach of contract claim by invoking the implied covenant of good faith and fair dealing. Plaintiff alleges that KeyBank and the Trusts breached the implied covenant of good faith and fair dealing owed under the Subordination Agreements by unreasonably withholding their consent to an Enforcement Action (i.e., to Plaintiff's proposed foreclosure of the Pledged Assets).

"Under South Carolina law, there exists in every contract an implied covenant of good faith and fair dealing. However, the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for a breach of contract." *Creamer* at *4 (internal citations and quotations omitted); *see also RoTec Servs., Inc. v. Encompass Servs., Inc.,* 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004) ("The implied covenant of good faith and fair dealing is not an independent cause of action").

Instead, "[t]his implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain. <u>The covenant cannot contravene the parties' express agreement or be used to forge a new agreement beyond the written language</u>." *In re Hovis*, 325 B.R. 158, 166 (Bankr. D. S.C. 2005) (internal citations and quotations omitted) (emphasis added), *aff'd,* 396 B.R. 895 (D. S.C. 2007), *aff'd in part sub*

7

65407024.3

*nom. In re Marine Energy Sys. Corp.*, 299 F. App'x. 222 (4th Cir. 2008) (unpublished). "[T]here is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84, 85 (1995).

The Trusts could not, as a matter of law, have violated the implied covenant of good faith and fair dealing by withholding their consent to Plaintiff's proposed foreclosure because, under the express terms of the Subordination Agreements, the Trusts may withhold their consent for any reason or no reason. Specifically, the Subordination Agreements state that "under no circumstances" may a party acquire the Pledged Assets without the approval of the Trusts. *See* Facts at 20. "Under no circumstances" means that, until the Trusts are paid in full, the *status quo* cannot be disrupted without the Trusts' voluntary consent, which includes situations where the Trusts are acting solely for their own benefit and placing their own interests above those of the Plaintiff or where the Trusts do not tell Plaintiff their rationale for withholding their consent.

Thus, Plaintiff's breach of contract claim essentially asks the Court to rewrite the express terms of the Subordination Agreements, using the implied covenant of good faith and fair dealing as its pen. Plaintiff asks the Court to rewrite the Subordination Agreements to say that the Trusts cannot withhold their consent to Plaintiff's foreclosure unless the Court likes the Trusts' rationale for withholding such consent. This is an invitation for the judiciary to judge the merits of parties' freely executed contracts – and is an invitation the Court should very definitely decline. Otherwise, the question would become whether it is the Court's role to enforce a contract as written, or whether it is the Court's role to second-guess the wisdom or folly of a particular contract and then rewrite it in terms that the Court prefers. The correct answer is the former.

8

65407024.3

In fact, it has been routinely held that the judiciary does not have authority to rewrite the terms of a freely negotiated commercial contract entered into among sophisticated parties, such as the Subordination Agreements at issue in this case. *See F.D.I.C. v. Prince George Corp.*, 58 F.3d 1041, 1050 (4th Cir. 1995) ("A court must enforce a contract as agreed between the parties and not make a new contract for them"); *Coker Int'l, Inc. v. Burlington Indus., Inc.*, 747 F. Supp. 1168, 1171 (D. S.C. 1990), *aff'd*, 935 F.2d 267 (4th Cir. 1991) ("It is not the duty of the courts to rewrite the parties' contract, even where a forfeiture may be involved"); *C.A.N. Enterprises, Inc. v. S.C. Health & Human Servs. Fin. Comm'n.,* 296 S.C. 373, 373 S.E.2d 584, 587 (1988) ("We are without authority to alter a contract by construction or to make new contracts for the parties. Our duty is limited to the interpretation of the contract made by the parties themselves regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully") (internal citations and quotation omitted).

Plaintiff's breach of contract claim must be dismissed because there has been no actual breach of the Subordination Agreements. In addition, Plaintiff's breach of contract claim, as it pertains to KeyBank, must be dismissed because KeyBank is not a party to the Subordination Agreements. KeyBank is a mere servicer for the Trusts. KeyBank has no rights, duties, or obligations under the Subordination Agreements and therefore cannot, as a matter of law, breach the Subordination Agreements.

Plaintiff's ability to prevail on its claim for declaratory judgment hinges on its ability to prevail on its breach of contract claim. Plaintiff asks the Court to issue an order authorizing Plaintiff to foreclose on the Pledged Assets – indeed, to issue an order sanctioning Plaintiff's breach of the Subordination Agreements. Yet, under the plain and unambiguous terms of the Subordination Agreements, "under no circumstances" may Plaintiff foreclose without the Trusts'

consent. The Trusts are entitled to withhold their consent for any reason or no reason, and Plaintiff's request for declaratory judgment should also be dismissed.

### Conclusion

Plaintiff has failed to plead actionable claims against KeyBank or the Trusts. The Trusts have merely sought to maintain the *status quo* under the Subordination Agreements and receive the benefit of their bargain. Meanwhile, Plaintiff wants to renege on the Subordination Agreements and use the Court as its tool in so doing. Plaintiff is not entitled to use this Court to rewrite the express terms of its contractual obligations. KeyBank and the Trusts should be dismissed from all claims asserted by Plaintiff, with prejudice.

WHEREFORE, KeyBank and the Trusts request dismissal of all claims asserted against them with prejudice and such other and further relief as the Court deems just and proper.

Dated: October 5, 2018

        Respectfully submitted,

        NELSON MULLINS RILEY & SCARBOROUGH LLP

        By:/s/ Frank B.B. Knowlton
            Frank B.B. Knowlton
            Federal Bar No. 02379
            E-Mail: frank.knowlton@nelsonmullins.com
            Graham S. Mitchell
            Federal Bar No. 11763
            E-Mail: graham.mitchell@nelsonmullins.com
            1320 Main Street / 17th Floor
            Post Office Box 11070 (29211-1070)
            Columbia, SC  29201
            (803) 799-2000

-and-

Brett D. Anders (*pro hac vice* application to be filed)
Aaron C. Jackson (*pro hac vice* application to be filed)
POLSINELLI
900 W. 48th Street, Suite 900
Kansas City, MO  64112
(816) 360-4277
Fax No. (816) 572-5077
banders@polsinelli.com
ajackson@polsinell.com

Attorneys for Defendants KeyBank National Association; Deutsche Bank Trust Company Americas, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2014-K37; and U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2013-KS01