IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Palmetto Assisted Living Systems, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>KeyBank National Association; Deutsche Bank Trust Company Americas, as trustee for the registered holders of the Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2014-K37; and U.S. Bank National Association, as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2013-KS01; FC Real Estate – Harbison, LLC; FC Real Estate – Rock Hill, LLC; FC Real Estate – Garden City, LLC; and FC Midlands, LLC,<br><br>Defendants. | C/A No. 3:18-cv-2665-CMC<br><br><br><br>Opinion and Order Granting<br>KeyBank, DBTCA, and U.S. Bank's<br>Motion to Dismiss (ECF No. 14) |

Through this action, Plaintiff, Palmetto Assisted Living Systems, Inc. ("Plaintiff"), brings a claim against Defendants KeyBank National Association ("KeyBank"); Deutsche Bank Trust Company Americas ("DBTCA"), as trustee for the registered holders of the Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2014-K37 ("the K37 Trust"); and U.S. Bank National Association ("U.S. Bank"), as trustee for the registered holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2013-KS01 ("the KS01 Trust") (collectively, the "Trust Defendants") for breach of contract. Plaintiff also seeks a declaratory judgment that KeyBank, U.S. Bank, and DBTCA breached the contract and implied covenant of good faith and

fair dealing in withholding consent to foreclose certain property, and that Plaintiff is entitled to a judgment allowing foreclosure. Plaintiff has also named as Defendants FC Real Estate – Harbison, LLC; FC Real Estate – Rock Hill, LLC; FC Real Estate – Garden City, LLC; and FC Midlands, LLC (collectively, "the Midlands Defendants").

The matter is before the court on the Trust Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). ECF No. 14. Plaintiff filed a response in opposition (ECF No. 23) and the Trust Defendants filed a reply (ECF No. 25). After reviewing the briefing, the court ordered the Trust Defendants to file further contract documents bearing on the issue (ECF No. 29), which were filed December 14, 2018 (ECF No. 30). The court also directed the parties to file their positions on the Senior Loan Documents' impact on their arguments regarding dismissal (ECF NO. 31), which they did (ECF Nos. 34, 35).

The court thereafter entered an Order holding the motion to dismiss in abeyance, as Plaintiff had requested leave to file an Amended Complaint in its response to the Trust Defendants' Motion to Dismiss. *See* ECF Nos. 23 at 6 (Plaintiff's response), 36 (Order). Plaintiff filed a motion for leave to file Amended Complaint, and attached the Proposed Amended Complaint. ECF No. 38. Both sets of Defendants opposed the motion. ECF Nos. 39, 40. Because it found Plaintiff's proposed amendments futile, the court denied Plaintiff's motion for leave to file an Amended Complaint. ECF No. 41. The court also noted it would apply the summary judgment standard to the Trust Defendants' motion, as it considered documents beyond those attached to the Complaint, and gave the parties until April 18, 2019 to file any additional items they wished the court to consider. *Id.* No such filings were made, and the deadline has expired.

For the reasons set forth below, the Trust Defendants' motion to dismiss, converted into one for summary judgment, is granted.

## STANDARD

Because the court has considered materials outside the pleadings, the standard applicable to motions for summary judgment applies. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## FACTS[1]

Plaintiff entered into three Subordination Agreements (the Harbison Subordination Agreement, the Rock Hill Subordination Agreement, and the Garden City Subordination Agreement) for the Midlands Defendants to purchase properties from Plaintiff. ECF No. 1-1 at ¶¶ 2, 42. Defendants U.S. Bank and DBTCA are the trustees for the KS01 and K37 Trusts, respectively, that hold the Promissory Note and Pledge and Security Agreement to facilitate this sale of properties,[2] and KeyBank acted as the master servicer for both U.S. Bank and DBTCA in

---

[1] These facts are drawn from Plaintiff's Complaint, and are accepted as true for purposes of this motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] DBTCA is the trustee for the K37 Trust, which holds the Note and Security Instrument identified in the Harbison Subordination Agreement. *Id.* at ¶ 6. U.S. Bank is the trustee of the KS01 Trust, which holds the Notes and Security Instruments identified in the Rock Hill Subordination Agreement and the Garden City Subordination Agreement. *Id.* at ¶ 11.

connection with the Subordination Agreements. *Id.* at ¶¶ 6, 11, 16. As set forth in the Subordination Agreements, Plaintiff holds a promissory note dated August 14, 2015, in which FC Midlands promised to pay eight million dollars and other certain sums due to Plaintiff (the "FC Midlands Loan"). *Id.* at ¶ 42. That loan is secured by a Pledge and Security Agreement between FC Midlands and Plaintiff, which provides terms and conditions under which Plaintiff may foreclose on and obtain membership of FC Midlands Properties III, LLC (currently held by FC Midlands). *Id.* at ¶ 43. Under the Subordination Agreements, KeyBank (as master servicer for the Trusts) must consent to any "Enforcement Action" Plaintiff may file to protect its interest in the event of a default under the FC Midlands Loan Agreement. *Id.* at ¶ 44.

On August 15, 2018, Plaintiff submitted to KeyBank, as master servicer for DBTCA and U.S. Bank, formal notice of its request under each Subordination Agreement for consent to proceed with an Enforcement Action against FC Midlands to obtain the membership interest in FC Midlands Properties, III, LLC, as contemplated in the Pledge and Security Agreement. *Id.* at ¶ 48. KeyBank refused Plaintiff's request for consent. *Id.* at ¶ 49. Although Plaintiff requested KeyBank (and U.S. Bank and DBTCA) provide a good faith reason for denying consent, they did not do so. *Id.* at ¶¶ 51-52.

## ARGUMENTS

In support of their motion to dismiss, the Trust Defendants argue the Complaint does not allege any actual breach of contract, because a refusal of consent prior to the debt being paid in full is not a breach of the terms of the Subordination Agreements. ECF No. 14 at 8. Even though the Trust Defendants refused to consent to an enforcement action, the Subordination Agreements specifically note Plaintiff may not proceed with an enforcement action until after the Trusts are paid in full for the senior indebtedness, except with the Trustees' consent, which they refused. *Id.*

They contend Plaintiff has attempted to circumvent this requirement by invoking the covenant of good faith and fair dealing; however, they argue that covenant is not an independent cause of action separate from a breach of contract claim under South Carolina law, and "cannot contravene the parties' express agreement." *Id.* at 7 (citing *In re Hovis*, 325 B.R. 158, 166 (Bankr. D. S.C. 2005)). The Trust Defendants argue they did not, as a matter of law, violate the covenant by withholding consent to Plaintiff's proposed enforcement action because, under the express terms of the Subordination Agreements, they may withhold consent for any or no reason. *Id.* at 8. They contend KeyBank must be dismissed because it is not a party to the Subordination Agreements, but is a mere servicer for the Trusts and has "no rights, duties, or obligations" under the agreements and therefore cannot breach them. *Id.* at 9. Finally, they request the court dismiss the declaratory judgment action as it "hinges on Plaintiff's ability to prevail on its breach of contract claim," which it cannot. *Id.* at 9-10.

In response, Plaintiff argues it has alleged facts sufficient to show a breach of contract occurred and it was damaged as a result. ECF No. 23 at 4. Plaintiff disagrees with the Trust Defendants' interpretation of the Subordination Agreements, arguing they do not contain a provision allowing consent to be withheld for any reason, and the parties to the contract did not contemplate arbitrary refusal, as this intention could have been effected by inserting the word "voluntary" before "consent." *Id.* Plaintiff also briefly argues its ability to prevail on the declaratory judgment claim does not depend on its ability to prevail on the breach of contract claim. *Id.* at 5-6. In the alternative, Plaintiff requests leave to amend the Complaint if the court determines Plaintiff has failed to plead with sufficient particularity. *Id.* at 9.

The Trust Defendants submitted a reply in further support of their motion, arguing Plaintiff's interpretation of the Subordination Agreements is incorrect because "consent," by

5

definition, must be voluntary. ECF No. 24. They argue the court should refrain from re-writing the contract to include a standard for consent to initiate an enforcement action. *Id.* at 2. Finally, they contend they did not violate any express term of the contract, and Plaintiff's claims should be dismissed as a matter of law. *Id.* at 3.

### DISCUSSION

The issue in this case is one of contract interpretation; specifically, whether a breach has occurred under the operative agreement. Under South Carolina law, the elements of a breach of contract are the existence of the contract, its breach, and the damages caused by such breach. *Fuller v. E. Fire & Cas. Ins. Co.,* 124 S.E.2d 602 (S.C. 1962). In construing a contract, the primary objective of the court is to ascertain and give effect to the intention of the parties. *Southern Atl. Fin. Servs., Inc. v. Middleton,* 562 S.E.2d 482, 484–85 (S.C. Ct. App.2002). A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be understood in their plain, ordinary, and popular sense. *Sphere Drake Ins. Co. v. Litchfield,* 438 S.E.2d 275 (S.C. Ct. App.1993). However, if the court determines the language of the contract is ambiguous, then "parol evidence is admissible to ascertain the true meaning and intent of the parties." *Koontz v. Thomas,* 511 S.E.2d 407, 411 (S.C. Ct. App.1999). An ambiguous contract is one that can be understood in more ways than just one or is unclear because it expresses its purpose in an indefinite manner. *Id.*

There exists in every contract an implied covenant of good faith and fair dealing. *Parker v. Byrd,* 420 S.E.2d 850 (S.C. 1992). However, a claim for breach of the covenant of good faith and fair dealing is not a separate cause of action under South Carolina law, but instead is subsumed under the breach of contract claim. *See RoTec Servs., Inc. v. Encompass Servs., Inc.,* 597 S.E.2d

881, 884 (S.C. Ct. App. 2004) (concluding that "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract").

In this case, the Subordination Agreements state (in pertinent part):

> Prior to the satisfaction of the Senior Indebtedness in full, Subordinate Lender will not pursue any Enforcement Action except with Mortgage Lender's consent and in accordance with the Senior Loan Documents. Specifically, under no circumstances may any party acquire any interest in the Pledged Assets without the approval of Mortgage Lender in accordance with the Transfer provisions of the Loan Agreement, including payment of an applicable Transfer Fee.

ECF No. 23-1 at 3. The agreements specifically state "the Subordinate Lender will not pursue an Enforcement Action except . . . in accordance with the Senior Loan Documents," and refer to the "Transfer provisions of the Loan Agreement," yet neither party addressed these transfer provisions or whether they had any impact on their positions regarding the alleged breach. After a court order, the parties filed the Loan Agreement, including transfer provisions, which reads as follows:

> **7.01 Permitted Transfers.** The occurrence of any of the following Transfers will not constitute an Event of Default under this Loan Agreement, notwithstanding any provision of Section 7.02 to the contrary:
>
> (a) A Transfer to which Lender has consented in Lender's sole discretion (without limiting Lender's sole discretion, Lender will not consent to a Transfer while an Event of Default exists) so long as Lender has received (i) a $5,000 review fee as a condition of Lender's considering any proposed Transfer, (ii) a transfer fee in an amount equal to 1% of the unpaid principal balance of the Indebtedness immediately before the Transfer as a condition of Lender's consent to the proposed Transfer, (iii) reimbursement for all of Lender's out-of-pocket costs (including reasonable Attorney's Fees and Costs) incurred in reviewing the Transfer request and any fees charged by the Rating Agencies, (iv) evidence satisfactory to Lender that the transferee and any SPE Equity Owner of such transferee meet the requirements of Section 6.13, and (v) such legal opinions from the transferee's counsel as Lender deems necessary, including an opinion that the transferee and any SPE Equity Owner is in compliance with Section 6.13, a nonconsolidation opinion (if a nonconsolidation opinion was delivered at origination of the Loan and if required by Lender), an opinion that the assignment and assumption of the Loan Documents has been duly authorized, executed, and delivered and that the

> assignment documents and the Loan Documents are enforceable as the obligation of the transferee.

ECF No. 30-1 at 51. The parties also submitted argument, at the request of the court, regarding the impact of these Transfer Provisions on their positions on the motion to dismiss. Plaintiff contends the issues before the court involve only the Subordination Agreements, and not the Senior Loan Documents, although the Senior Loan Documents "provide the method for which a transfer will occur, subsequent to the Bank Defendants granting the Plaintiff permission to pursue an Enforcement Action," which has not yet occurred. ECF No. 34 at 3. Therefore, Plaintiff argues, the Senior Loan Documents are "entirely immaterial." *Id.* at 5. The Trust Defendants argue Plaintiff's "only path to an Enforcement Action requires (a) getting the Trusts' affirmative consent and (2) complying with the Trusts' Senior Loan Documents." ECF No. 35 at 2. They contend Plaintiff has failed to secure their permission despite its "independent obligation to get the Trusts' consent under Section 7.01(a), which expressly states that the Trusts can withhold their consent in their 'sole discretion.'" *Id.* at 3.

The court disagrees the Senior Loan Documents are immaterial: they are specifically referred to in the Subordination Agreements, and clearly place requirements in addition to the Mortgage Lender's consent on an Enforcement Action. Construing the Subordination Agreements to end after "Mortgage Lender's consent" would be to re-write the terms of the contract.

Having determined the Senior Loan Documents are relevant in the determination at hand, it is clear Plaintiffs have not met the requirements to pursue an enforcement action. A permitted transfer requires the Mortgage Lender's consent in its sole discretion by the terms of the Senior Loan Documents, along with other items. Plaintiff has not alleged it fulfilled these terms, which

include a $5,000 "review fee as a condition of Lender's considering any proposed transfer," and cannot show it obtained the Mortgage Lender's consent in its sole discretion.[3]

The court agrees with the Trust Defendants the term "consent" in the Subordination Agreements is clear and unambiguous. The contract does not include a requirement that consent be given unless refused for a non-arbitrary reason. Therefore, the court will not imply such an understanding. While Plaintiff argues this view of the contract requires the court to "rewrite" its terms, the court finds Plaintiff's "interpretation," which would require consent to be non-arbitrary, is the one that would require insertion of terms or revision. The Subordination Agreements do not set any parameters or restrictions on the type of consent contemplated by the parties. Therefore, "consent" must be "understood in [its] plain, ordinary, and popular sense," which would not require any reason given, much less a non-arbitrary one, for withholding consent to an enforcement action. *See Dobyns v. S.C. Dept. of Parks, Recreation, and Tourism*, 480 S.E.2d 81, 84 (S.C. 1997) ("There is no stated reasonableness requirement and this Court declines to read one into the contract. If the parties had chosen to limit [Defendant's] ability to deny consent, they could have so stated in the contract.").

As there is no breach of contract, there can be no action for breach of the implied covenant of good faith and fair dealing. *See RoTec Servs.,* 597 S.E.2d at 884 ("[T]he implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract"). Therefore, Plaintiff's breach of contract cause of action is dismissed with prejudice.

---

[3] It appears Plaintiff cannot allege it has fulfilled those terms, as its Proposed Amended Complaint also failed to so allege.

9

Plaintiff also brought a declaratory judgment claim seeking a declaration the Trust Defendants "materially breached the Subordination Agreements by refusing to consent to Palmetto's Enforcement Action arbitrarily, capriciously, and without good faith and dealing fairly with Palmetto, and (2) whether Palmetto may disregard the requirement for consent" by the Trust Defendants due to their alleged breach of the covenant of good faith and fair dealing. ECF No. 1-1 at 12-13. Plaintiff disagrees with the Trust Defendants' arguments that its ability to "prevail on its claim for declaratory judgment hinges on its ability to prevail on its breach of contract claim," without explaining how the declaratory judgment claim can survive dismissal of the breach of contract claim. ECF No. 23 at 5-6. The court finds the declaratory judgment claim to be wholly dependent on the breach of contract claim, as the former would require a finding of breach to be granted. As the court has determined no breach occurred, Plaintiff's declaratory judgment claim is also dismissed.

## CONCLUSION

For the reasons set forth above, the Trust Defendants' motion to dismiss, converted by this court into one for summary judgment, is granted as to all claims. The claims against the Trust Defendants are dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
April 25, 2019